UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIESHA ALLEN, PAMELA BARLOW, LISA COLLINS, MELISSA GOOCH, ROBER GOOCH, JAMIE LEE HARRIS, FREDERICK MULLINS, ALLEN COUGHANOUR, RACHEL COUGHANOUR, LAKEISHA R. MCLEOD, WILLIE D. MCLEOD, LANIKA R. SAUNDERS, KAREEN SAUNDERS, DINA ABBOTT, MILES ABBOTT, BEATRICE L. GRINER, LARRY GRINER, DONALD L. BENTHUSEN, ANDREA F. BENTHUSEN, SHAUNA N. GUENTHER, ALICE M. DISHONG, JEFFREY DISHONG, JENNIFER R. WIDMER, DANIELLE J. MELNYK, GLENN MELNYK,<br><br>    Plaintiffs,<br><br>v.<br><br>BAYER HEALTHCARE PHARMACEUTICALS INC.,<br><br>    Defendant. | Case No. 4:14-cv-0420<br><br>Pending transfer to MDL-2434 (*In re: Mirena IUD Products Liability Litigation-7:13-md-02434-CS-LMS S.D.N.Y.*)<br><br>**JURY TRIAL DEMANDED** |

## NOTICE OF REMOVAL OF CIVIL ACTION

Defendant Bayer HealthCare Pharmaceuticals Inc. ("Bayer") removes this action from the Circuit Court of the City of St. Louis, Twenty-Second Judicial Circuit, State of Missouri to the United States District Court for the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  As set forth in more detail below, this Court has subject matter jurisdiction over this action because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and complete diversity of citizenship exists between Defendant and all properly joined Plaintiffs.  In support of removal, Bayer states as follows:

1

**I.      INTRODUCTION**

1. Twenty-five plaintiffs from 11 different states filed this civil action on February 5, 2013, in the Circuit Court of the City of St. Louis, styled *Kiesha Allen, et al. v. Bayer HealthCare Pharmaceuticals Inc.*, Cause No. 1322-CC00276.

2. This is one of a number of products liability actions now pending in the federal courts involving allegations of the alleged risks associated with the Mirena IUS and the adequacy of FDA-approved product warnings.  On April 8, 2013, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") determined that centralization was appropriate for these actions and began transferring Mirena cases involving allegations of perforation and/or migration to Judge Cathy Seibel of the United States District Court for the Southern District of New York for consolidated pretrial proceedings.  *See* 4/8/13 JPML Transfer Order, attached hereto as Exhibit 1.

**II.     BAYER SATISFIES THE PROCEDURAL REQUIREMENTS FOR REMOVAL**

3. Pursuant to 28 U.S.C. § 1446(a), attached as Exhibit 2 is the Petition filed in this action and attached as Exhibit 20 is a copy of all the process and pleadings served upon Bayer to date.

4. The United States District Court for the Eastern District of Missouri, Eastern Division, is the proper venue for removal under 28 U.S.C. § 1441(a) because it is "the district and division embracing the place where such action is pending," namely, the City of St. Louis, Missouri.

5. Pursuant to 28 U.S.C. § 1446(d), written notice of this removal is being provided to all parties and the clerk of the Circuit Court of the City of St. Louis, State of Missouri.

### III. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. §§ 1332 AND 1441

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(a) and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, complete diversity of citizenship exists between Defendant and all properly joined Plaintiffs (*see* Ex. 2, Pet. ¶¶ 1, 3-17), and Defendant is not a citizen of Missouri (*id.* ¶ 17), the state in which this action was brought.

#### A. The Citizenship of Plaintiffs Pamela Barlow and Roger Mullins Does Not Defeat Diversity Jurisdiction Because They Are Fraudulently Joined

7. This Court already held that Plaintiffs Barlow and Mullins "have not raised a colorable cause of action," that "the joinder of Barlow and Mullins is fraudulent," and that "their citizenship will not defeat diversity jurisdiction." *Allen v. Bayer Healthcare Pharm., Inc.*, 4:14-CV-178 CEJ, 2014 WL 655585, at *3-*4 (E.D. Mo. Feb. 20, 2014) (Jackson, J.) (attached as Ex. 3). The fraudulent joinder issue has been fully litigated between the parties and was a primary subject of briefing after Defendant first removed this action in January (*see* Ex. 4, 2/4/14 Memo in Support of Motion to Remand (without exhibits), at ¶¶ 13-24; Ex. 5, 2/11/14 Memo in Opposition to Remand (without exhibits), at pp. 3-10; Ex. 6, 2/11/14 Reply in Support of Remand (without exhibits), at ¶¶ 3-5).

8. Judge Jackson's holding that Plaintiffs Barlow and Mullins are time-barred and fraudulently joined is consistent with an earlier decision by this Court, in another Mirena action, holding under very similar circumstances that the lone nondiverse plaintiff in a 93-plaintiff Mirena® action was time-barred and thus fraudulently joined. *Witherspoon v. Bayer HealthCare Pharms. Inc.*, 4:13CV01912 ERW, 2013 WL 6069009 (E.D. Mo. Nov. 18, 2013) (Webber, J.)

3

9.  Here, it has already been found that there exists no basis in fact and law supporting Plaintiffs Barlow and Mullins' claims, which are time-barred.  Their citizenship should therefore be disregarded for purposes of determining jurisdiction.

### B. The Amount in Controversy Requirement is Satisfied

10. Neither the Complaint nor any other pleading or other paper served on Defendant expressly states the amount in controversy.  When, as in Missouri, state practice "does not permit demand for a specific sum," the Notice of Removal may assert that the amount in controversy requirement is satisfied.  28 U.S.C. §1446(c)(2)(A)(ii).  When the amount in controversy is in dispute, Defendant must show, "by the preponderance of the evidence, that the amount in controversy exceeds" $75,000.  28 U.S.C. § 1446(c)(2)(B).  "Under the preponderance standard, '[t]he jurisdictional fact ... is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are....'" *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009) (emphasis in original) (*quoting Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir.2002)); *see also White v. United Parcel Serv.*, 4:11CV00707 AGF, 2012 WL 760936 (E.D. Mo. Mar. 8, 2012) (same).

11. "Where there are multiple plaintiffs, only one plaintiff must allege a claim that is in excess of $75,000 in order for the Court to have subject-matter jurisdiction over the entire Article III 'case or controversy.'" *Tebeau v. Gen. Motors Corp.*, 4:09CV00398 ERW, 2011 WL 4953999 (E.D. Mo. Oct. 18, 2011) (*quoting Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 561 (2005)); 28 U.S.C. § 1367.

12. Here, the jurisdictional amount is evidenced by the injuries and damages claimed on the face of the Petition, the injuries evidenced by medical records obtained through discovery, and Plaintiffs' counsel's conduct in other litigation.

4

### 1. The Jurisdictional Amount is Facially Apparent From the Petition

13. Where, as here, a complaint does not allege a specific amount of damages, the district court may consider whether it is facially apparent from the complaint that the jurisdictional amount has been satisfied. *Quinn v. Kimble*, 228 F. Supp. 2d 1036, 1038 (E.D. Mo. 2002); *Carville v. Sheraton Corp.*, 4:08CV01567 FRB, 2009 WL 1393872 (E.D. Mo. May 15, 2009) (holding, based solely on injuries alleged in the Petition, "that, as a legal matter, a fact finder might legally conclude that plaintiffs are entitled to damages in excess of $75,000.00"). Courts across the country routinely hold that cases involving serious physical injuries, such as those alleged here, satisfy the amount in controversy requirement. *See, e.g.*, *Quinn*, 228 F. Supp. 2d at 1037-38 (holding it was "facially apparent" that amount in controversy requirement was satisfied "[g]iven the allegations in the complaint that plaintiffs suffered head, neck, and back injuries; incurred medical expenses and will incur further such expenses; have permanent, progressive, and disabling injuries," even though plaintiffs asserted that their total damages did not exceed $75,000); *Bailey v. J.B. Hunt Transp., Inc.*, No. 06-240, 2007 WL 764286, at *6 (E.D. Pa. Mar. 8, 2007) (amount in controversy requirement satisfied where complaint alleged a "litany of serious, permanent injuries," "surgeries and treatments," and "the allegedly permanent impairment of [the] ability to enjoy life's activities"); *McCoy v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002) ("courts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages exceeded the jurisdictional amount").

14. Fourteen properly joined Plaintiffs allege that, as a result of their use of Mirena, they suffered serious bodily injuries (*see, e.g.*, Ex. 2, Pet. ¶¶ 1, 3-15). Nine properly joined Plaintiffs allege that they suffered loss of companionship (*see, e.g., id.* Pet. ¶¶ 5-11, 13, 15). According to the Petition, "each of the Plaintiffs" has and/or will experience "a lifetime of

suffering and substantial sums in healthcare costs, supportive care, emotional and physical distress, and lost earning potential" (*id.* at ¶ 47).  Plaintiffs have allegedly "(a) [s]uffered severe and permanent injuries, which they will be forced to endure for the remainder of their lives; (b) [s]uffered physical pain and suffering; (c) [s]uffered mental pain and suffering; (d) [s]uffered from loss of enjoyment of life; (e) [i]ncurred substantial costs for medical care in the past, and will in reasonable medical probability incur substantial medical care in the future; (f) [s]uffered a loss of earnings and of future earning capacity; and, (g) [i]ncurred attorney's fees and expenses of litigation related to this action" (*id.* at ¶ 50).  Plaintiffs also allege that "[t]here were and are no other reasonable, secondary causes of Plaintiffs' injuries and damages other than the use of Mirena IUS" (*id.* at ¶ 56).

15.   Not only do Plaintiffs seek compensatory damages for their extensive alleged injuries, as described above, but Plaintiffs also seek attorneys' fees and punitive damages (*see id.* at pp. 15-25 ("Wherefore" clauses)) – both of which are includable to satisfy the jurisdictional amount.  *See Polites v. Home Depot U.S.A., Inc.*, 4:13CV143 CDP, 2013 WL 2420674 (E.D. Mo. June 3, 2013) ("even assuming that Plaintiffs' actual damages are less than $75,000, Polites' demand for punitive damages, damages for emotional distress, and attorneys' fees would increase this amount"), *Cohoon v. Scenic Nursing & Rehab. Ctr., LLC*, 4:07CV1316 HEA, 2007 WL 2669095 (E.D. Mo. Sept. 6, 2007) (finding jurisdictional amount satisfied when "in the prayer for relief, [plaintiff] requests actual damages, compensatory damages, punitive damages, prejudgment interest, and attorney's fees and costs"); *see also Young v. State Farm Fire & Cas. Co.*, 4:08CV1891MLM, 2010 WL 173832 (E.D. Mo. Jan. 15, 2010) (court can "assume that attorneys' fees would be based on a twenty-five percent contingency fee" in determining whether

defendant met burden to establish jurisdictional amount); *Osia v. Mid-Century Ins. Co.*, 4:06CV658 CAS, 2006 WL 1523020 (E.D. Mo. May 30, 2006) (same).

16.     Thus, it is facially apparent from the complaint that the jurisdictional amount has been satisfied based on Plaintiffs' allegations of "severe and permanent injuries, which they will be forced to endure for the remainder of their lives," substantial physical and mental pain and suffering, "substantial sums in healthcare costs," "a loss of earnings and of future earning capacity," punitive damages, and attorneys' fees. *See Quinn*, 228 F. Supp. 2d at 1038; *see also Witherspoon*, 2013 WL 6069009, at *3-*5 (finding diversity jurisdiction in a different Mirena action on the face of a Petition alleging similar injuries).

### 2.      The Jurisdictional Amount is Evidenced by Plaintiffs' Medical Records

17.     Plaintiffs' own medical records evidence serious injuries such that "a fact finder *might* legally conclude that" damages are greater than $75,000. *Bell*, 557 F.3d at 959 (emphasis in original). For example, Plaintiff Beatrice Griner suffered a perforated uterus and the development of an abscess in her abdomen (Ex. 21, 9/26/11 Griner Record).[1] The perforation and abscess required a supracervical hysterectomy (i.e., a surgical removal of the entire uterus above the cervix), leaving Ms. Griner infertile (*id.*).

18.     Plaintiff Lakeisha McLeod suffered from severe uterine fibroids, and underwent a hysterectomy and a right salpingo-oophorectomy (i.e. surgical removal of an ovary and fallopian tube), leaving her infertile as well (Ex. 22, 8/29/11 McLeod Record).

19.     Plaintiff Danielle Melnyk suffered a perforated uterus (Ex. 23, 12/15/11 Melnyk Record). Before Ms. Melnyk's Mirena was surgically removed, she became pregnant and suffered a miscarriage (*id.*).

---

[1] Exhibits 21-30 to this Notice of Removal are filed separately in accordance with Bayer's concurrent Motion for Leave to File Exhibits to Notice of Removal Under Seal.

7

20. In addition to those plaintiffs listed above, at least seven other plaintiffs suffered a perforated or embedded uterus, requiring surgical removal of Mirena, including Dina Abbott, Andrea Benthusen, Rachel Coughanour, Alice Dishong, Shauna Guenther, Lanika Saunders, and Jennifer Widmer (*see* Ex. 24, 11/22/11 Abbott Record; Ex. 25, 4/27/12 Benthusen Record; Ex. 26, 11/18/11 Coughanour Record; Ex. 27, 11/17/11 Dishong Record; Ex. 28, 4/2/12 Guenther Record, at 1 ("Exploratory Laparotomy. Date: 12/10/2011. retrieval of abdominal IUD"); Ex. 29, 11/16/11 Saunders Record; Ex. 30, 3/16/12 Widmer Record).

21. In light of some of the severe injuries suffered by Plaintiffs Griner, McLeod, and Melnyk, the perforations and surgical removals suffered by several other Plaintiffs, the variety of compensatory and punitive damages sought by each Plaintiff, and Plaintiffs' request for attorneys' fees, it is certain that for ***at least one*** of the 25 plaintiffs in this action, "a fact finder *might* legally conclude that" damages are greater than $75,000. *Bell*, 557 F.3d at 959 (emphasis in original).

### 3. The Jurisdictional Amount is Evidenced by Plaintiffs' Counsel's Conduct in Other Litigation

22. Plaintiffs are represented in this action by four different law firms, including Motley Rice LLC and The Lanier Law Firm (Ex. 2, Pet. at p. 26). Motley Rice LLC has filed at least 14 Mirena lawsuits in federal court asserting diversity jurisdiction, and thus, an amount in controversy above $75,000. The Lanier Law Firm has filed at least 23 Mirena lawsuits in federal court, asserting diversity jurisdiction and thus, an amount in controversy above $75,000. Plaintiffs' counsel cannot in good faith deny that the amount in controversy in this action is less than $75,000 and at the same time represent in 37 other Mirena actions that the jurisdictional amount is satisfied.

23. Although variation naturally exists amongst different cases, the injuries alleged in many of Plaintiffs' counsel's federal Complaints entail less potential damages than the injuries suffered by some plaintiffs in this action. For example, many of the federal court Complaints filed by Motley Rice LLC and The Lanier Law Firm allege only that a Mirena perforated or embedded plaintiff's uterus and required minimally invasive surgery for removal. *See, e.g.*, Ex. 7, Bailey Complaint, at ¶¶ 44-45; Ex. 8, Davignon Complaint, at ¶¶ 44-45; Ex. 9, Day Complaint, at ¶¶ 42-43; Ex. 10, Delloyd Complaint, at ¶¶ 43-45; Ex. 11, Halton Complaint, at ¶ 42; Ex. 12, Harmer Complaint, at ¶ 44; Ex. 13, Lukacs Complaint, at ¶ 38; Ex. 14, McLaughlin Complaint, at ¶¶ 43-44; Ex. 15, Sell Complaint, at ¶¶ 44-45; Ex. 16, Stabenow Complaint, at ¶¶ 44-45; Ex. 17, Taft Complaint, at ¶¶ 43-44. As described above, here at least two Plaintiffs underwent a hysterectomy and resultant infertility, and at least one Plaintiff suffered a miscarriage during her use of Mirena (*supra* ¶¶ 17-19). At least nine Plaintiffs in this case suffered a perforation or embedment injury that required surgical removal (*id.* at ¶ 20).

24. To dispute that the jurisdictional amount is satisfied in this action, Plaintiffs' counsel would have to argue that a jury legally could not award more than $75,000 in damages to *any one of the 25 plaintiffs in this action*, while at the same time representing to federal courts across the country that *every single one of the plaintiffs in their 37 federal Mirena actions* suffered more than $75,000 in damages despite many having less extensive or even identical injuries.

## IV.   THIS REMOVAL IS TIMELY

25. This removal is timely filed pursuant to 28 U.S.C. Section 1446(b) and (c).

9

1.  **This Removal is Timely Filed Because the 28 USC Section 1446(b) Time Limits Do Not Apply**

26. The Eighth Circuit has adopted a "bright-line rule" that the thirty-day time limit of 28 U.S.C. Section 1446(b) does not begin to run until receipt of a complaint or other paper that "explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount." *Hesser v. Home Depot U.S.A., Inc.*, 4:13-CV-227 CAS, 2013 WL 1914435 (E.D. Mo. May 8, 2013) *citing In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000); *see also Branham v. Hunter's View, Ltd.*, 4:11CV0230 TCM, 2011 WL 1660559 (E.D. Mo. May 3, 2011); *Metzger v. Wal-Mart Stores, Inc.*, 4:07CV1024DDN, 2007 WL 2454121 (E.D. Mo. Aug. 23, 2007). Even ***actual knowledge*** of the amount in controversy does not cause the thirty-day time limit of Section 1446(b) to run when a paper or pleading in the case has not explicitly disclosed an amount in controversy greater than $75,000. *See Hesser*, 2013 WL 1914435, at *3-*4.

27. The Petition does not explicitly disclose an amount in controversy of at least $75,000, nor does any pleading or other paper served in this case. Therefore, the thirty-day limit of Section 1446(b) does not apply in this action and this Notice of Removal is timely.

2.  **This Removal is Timely Filed Because One or More Exceptions to 28 U.S.C. Section 1446(c) Apply**

28. A case may be removed more than one year after commencement of the action if the district court finds that "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). In addition to the bad faith exception, a case may also be removed more than one year after commencement if "the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal." 28 U.S.C. § 1446(c)(3)(B). In adding these exceptions in 2011, Congress expressed concern that the strict one year limit "led some plaintiffs to adopt removal-defeating strategies designed to keep the case in state court until after the 1-year deadline passed." H.R. REP. 112-

10, 15, 2011 U.S.C.C.A.N. 576, 580.  Plaintiffs' bad faith is manifested both by their deliberate failure to disclose the actual amount in controversy to prevent removal, and by their fraudulent joinder of Plaintiffs Barlow and Mullins.

### a) Plaintiffs Deliberately Failed to Disclose the Actual Amount in Controversy to Prevent Removal

29. A case can be removed more than one year after commencement if "the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal." 28 U.S.C. § 1446(c)(3)(B).  Here, Bayer specifically sought disclosure from Plaintiffs prior to one year after commencement of the action that would explicitly establish the amount in controversy, but Plaintiffs refused to admit or deny the amount they are seeking.  On December 10, 2013, Defendant served a Request for Admission on Plaintiffs.  The single request read: "Admit that the amount of damages you seek in this lawsuit exceeds the sum or value of $75,000, exclusive of costs and interest" (*see* Ex. 18, 12/10/13 RFA to Plaintiffs, at 2).  The request tracked almost word-for-word the amount-in-controversy requirement of the diversity jurisdiction statute.  28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . .").  On January 9, Plaintiffs served a response to Defendant's request, which stated in part, "based on reasonably [sic] inquiry and the information known regarding the nature and extent of the various Plaintiffs' injuries, Plaintiff cannot truthfully admit or deny this request" (Ex. 19, 1/9/14 Response to Defendant's Request for Admission).  This response constitutes a deliberate failure to disclose the actual amount in controversy to prevent removal.

30. First, Plaintiffs' counsel's conduct in other federal court litigation demonstrates that their refusal to admit to the amount in controversy was done in bad faith.  Motley Rice LLC and The Lanier Law Firm have filed at least 37 complaints in federal court that assert diversity

11

jurisdiction and an amount in controversy above $75,000 (*supra* ¶ 22). The injuries suffered by some of the Plaintiffs here, including multiple Plaintiffs who underwent hysterectomies with subsequent infertility, and another who suffered a miscarriage during her use of Mirena, increase the potential damages that a jury *might* award (*see supra* ¶¶ 17-19).

31. Plaintiffs' counsel cannot argue that a jury legally could not award more than $75,000 in damages to ***any one of the 25 plaintiffs in this action***, while at the same time representing to federal courts across the country that ***every single one of the plaintiffs in their 37 federal Mirena actions*** suffered more than $75,000 in damages. Nor can they argue that, 11 months after filing this action, they did not have enough of an opportunity to investigate the nature and extent of Plaintiffs' injuries when in their 37 federal court actions, they apparently were able to conduct a sufficient investigation prior to filing.

32. Second, Plaintiffs' refusal to admit to the Request for Admission is inconsistent with their pleadings and Plaintiffs' own medical records. Plaintiffs allege that each of them has and/or will experience "***a lifetime of suffering and substantial sums in healthcare costs, supportive care, emotional and physical distress, and lost earning potential***" (*id.* at ¶ 47), and "***severe and permanent injuries, which they will be forced to endure for the remainder of their lives***" (*id.* at ¶ 50). Taken together with Plaintiffs' own medical records, which show that multiple plaintiffs underwent hysterectomies with subsequent infertility, and another suffered a miscarriage during her use of Mirena (*see supra* ¶¶ 17-19), these allegations make clear that Plaintiffs claim significant compensatory damages. Plaintiffs also make claims for punitive damages and legal fees. Plaintiffs' supposed inability to admit that they are seeking more than $75,000 in damages in this lawsuit is patently inconsistent with their allegations and the facts of this case.

33.     Finally, and most obviously, *Plaintiffs have no incentive not to admit that they seek more than $75,000 in this action, except to prevent removal*.  Every plaintiff's lawyer working zealously to protect the interests of his or her client is seeking damages to the fullest extent that the law will allow, and there is no suggestion by Plaintiffs that each and every one of them are or even could be prohibited by law from recovering more than $75,000.  Indeed, upon Defendant's first removal of this action, Plaintiffs did not even dispute Defendant's assertion that the amount in controversy existed (*see* Ex. 4, 2/4/14 Memo of Law in Support of Motion to Remand).

34.     The figure chosen for the Request for Admission was exactly the jurisdictional amount for diversity jurisdiction, and the request was worded to match the statute.  Plaintiffs' refusal to admit they were seeking that amount fits the Section 1446(c)(3)(B) exception exactly, and this Court can find "that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal."  28 U.S.C. § 1446(c)(3)(B).  Defendant's removal is therefore timely.

### b)     Plaintiffs' Fraudulent Joinder Constitutes Bad Faith

35.     The Supreme Court has held that fraudulent joinder of a party to defeat diversity jurisdiction is "made without right and made in bad faith."  *Chicago, R.I. & P. Ry. Co. v. Whiteaker*, 239 U.S. 421, 425 (1915) (*citing Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)); *Polito v. Molasky*, 123 F.2d 258, 260 (8th Cir. 1941) (same).  Thus, although the "bad faith" exception to the one-year time limit for removal is relatively new, courts have already begun to hold that fraudulent joinder constitutes "bad faith" under the meaning of 28 U.S.C. Section 1446(c)(1), thus permitting removal more than one year from commencement of an action.  *See DeLeon v. Tey*, 7:13-CV-439, 2013 WL 7157957, at *3-*4 (S.D. Tex. Dec. 4, 2013).  This holding is in line with the comments to Section 1446:

>The one-year cutoff therefore has an anti-diversity ring to it. Congress acknowledged this, but called it a "modest curtailment".
>
>The defendants with the diverse citizenship, who want to remove, may not be entirely helpless. If they can produce evidence to convince the court that the nondiverse defendant can in no way be liable under the applicable substantive law as applied to the facts as pleaded, they might convince the court to apply the so-called "fraudulent joinder" doctrine. Under that doctrine, the citizenship of a person against whom the plaintiff has no genuine claim--a person whom the plaintiff has joined in what in effect is bad faith-- can be ignored. ***The bad faith need not be actual, moreover. It can be merely constructive.*** The U.S. Supreme Court said in *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 27 S.Ct. 184 (1907), in a fraudulent joinder framework, that "knowledge may be imputed where one wilfully closes his eyes to information within his reach".

Comments to 28 U.S.C.A. § 1446 (West) (emphasis added).

36. Here, this Court already held that Plaintiffs Barlow and Mullins were fraudulently joined in order to defeat diversity jurisdiction. Plaintiffs' actual, or at the very least constructive, bad faith therefore entitles Defendant to remove this action outside the one-year limit of Section 1446(c)(1).

## V. CONCLUSION

37. In this civil action, there is complete diversity of citizenship between Defendant Bayer and the 23 properly joined Plaintiffs, and the amount in controversy is satisfied. Thus, this case is removable pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Defendant Bayer HealthCare Pharmaceuticals Inc. hereby removes the above-captioned action to the United States District Court for the Eastern District of Missouri.

Dated:  March 6, 2014	Respectfully submitted,

*s/ Terry Lueckenhoff*
Terry Lueckenhoff, #27810MO
Katherine M. Fowler, #50344MO
Fox Galvin, LLC
One S. Memorial Drive, 12th Floor
St. Louis, MO 63102
(314) 588-7000
(314) 588-1965 (Fax)
tlueckenhoff@foxgalvin.com
kfowler@foxgalvin.com

Marie S. Woodbury, #31489MO
Jennifer M. Stevenson, #57264MO
Jeremiah S. Wikler, #60113MO
Shook, Hardy & Bacon, L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108
(816) 474-6550
(816) 421-5547 (Fax)
mwoodbury@shb.com
jstevenson@shb.com
jwikler@shb.com

*Attorneys for Defendant Bayer HealthCare Pharmaceuticals Inc.*

15

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 6, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record and/or sent via U.S. Mail, postage prepaid, to:

Douglas P. Dowd
William T. Dowd
Dowd & Dowd, P.C.
211 N. Broadway, Suite 4050
St. Louis, MO 63102

John J. Driscoll
The Driscoll Firm, P.C.
211 N. Broadway, 40th Floor
St. Louis, MO 63102

Carmen S. Scott
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

W. Mark Lanier
Richard Meadow
Catherine Heacox
The Lanier Law Firm, PLLC
126 East 56th Street, 6th Floor
New York, NY 10022

*Attorneys for Plaintiffs*

                                                      *s/ Terry Lueckenhoff*